UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:                                         Case No. GL 13-01464
                                               Chapter 13
MELISSA STARR ROGERS,

         Debtor.

_____/


## OPINION DENYING CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 13 PLAN


Appearances:

Robert W. Dietrich, Esq., Lansing, Michigan,
        for Melissa Starr Rogers, Debtor.

James W. Batchelor, Esq., Grand Rapids, Michigan,
        for Ocwen Loan Servicing, LLC, Creditor.


### I. ISSUE.

May a chapter 13 plan be confirmed that modifies a protected residential mortgage so attorneys' fees may be paid first?

### II. JURISDICTION.

This court has jurisdiction over the bankruptcy case. 28 U.S.C. § 1334. This bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); L.Civ.R. 83.2(a) (W.D. Mich.). This contested matter is a core proceeding and this court may enter a final order. 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

### III. FACTS AND PROCEDURAL HISTORY.

There are no contested facts in the matter before the court. At issue is a chapter 13 plan provision which has been objected to by a mortgage holder. A summary of the procedural history is helpful to understand this dispute.

On February 27, 2013, Melissa Starr Rogers ("Debtor"), filed her Chapter 13 Voluntary Petition. (Dkt. No. 1). Listed on Schedule A - Real Property is the Debtor's residence, owned as tenants by the entirety with her non-debtor husband Greg Rogers. Listed on Schedule D - Creditors Holding Secured Claims is Nationstar Mortgage, which has a mortgage on the residence. Although the record is somewhat unclear, it appears that Ocwen Loan Servicing, LLC (the "Mortgage Creditor"), is the servicer of the Nationstar (or its successor's) mortgage.

On February 28, 2013, the Debtor filed her Original Chapter 13 Plan ("Plan"). (Dkt. No. 6). The Plan provides that the monthly payment to the Mortgage Creditor is $971.96 and that the estimated arrearage on the mortgage is $4,000.00. The Plan provides that the Debtor shall pay $1,950.00 per month to the chapter 13 trustee ("Trustee"). Attorneys' fees are disclosed to be $3,000.00. Of this amount, $1,355.00 is to be paid directly by the Debtor and the balance of $1,645.00 is to be paid by the Trustee through the Plan.

In the priority of payments designated by the Plan, attorneys' fees and expenses are to be paid prior to payments on continuing claims, including the on-going monthly mortgage payments owed to the Mortgage Creditor. See Plan, ¶ IV.H.I.4. (striking the provision "subject to monthly continuing claims payments"). (Dkt. No. 6). This striking of this district's model plan provision is reiterated in paragraph IV.P.7. which states that

2

attorneys' fees will be paid *prior* to the on-going monthly payments, including the Mortgage Creditor's regular mortgage payment.

On April 5, 2013, the Mortgage Creditor filed its Objections to Confirmation. (Dkt. No. 17). The principal objection is that "the Debtor's proposed Plan of Reorganization attempts to modify the mortgage held by [Mortgage] Creditor in contravention of 11 U.S.C. Section 1322(b)(2) by spreading post-petition/pre-confirmation payments over time."

On May 13, 2013, the Debtor filed her First Pre-Confirmation Plan Amendment. (Dkt. No. 21). That amendment did not change the proposed priority of payment between attorneys' fees and the on-going future mortgage payments.

The initial confirmation hearing took place on May 14, 2013, in Lansing, Michigan. The court requested legal memoranda from the Debtor and the Mortgage Creditor. On June 14, 2013, the Debtor submitted her Brief in Opposition to Ocwen Loan Servicing, L.L.C.'s Objections to Confirmation ("Debtor's Brief"). (Dkt. No. 24). On July 5, 2013, the Mortgage Creditor filed its Brief in Support of Objections to Confirmation. (Dkt. No. 27). On July 8, 2013, the Debtor filed her Supplemental Brief. (Dkt. No. 28). At the adjourned confirmation hearing on July 12, 2013, the court took this matter under advisement.

## IV. DISCUSSION.

A.    *The Anti-Modification Provision and Protected Mortgages.*

Chapter 13 of the Bankruptcy Code[1] generally permits modification of the rights of secured creditors. § 1322(b)(2). However, an important exception exists. No

---

[1] References to the Bankruptcy Code, 11 U.S.C. § 101-1532 inclusive, shall be cited as "§ ___." When necessary, amendments made by the Bankruptcy Abuse Prevention and

modification of "a claim secured only by a security interest in real property that is the debtor's principal residence" is permitted.   § 1322(b)(2); Nobelman v. American Sav. Bank, 508 U.S. 324, 329, 113 S.Ct. 2106, 2110 (1993) ("rights" that a mortgagee has are protected by § 1322(b)(2)).   The court refers to this exception as the "anti-modification provision."   A mortgage covered by this provision is sometimes referred to as a "protected mortgage."[2]

Protected mortgages may not be modified in any manner.   What a mortgage requires is binding upon a debtor.   The major effect is that the monthly payments, the interest rate, and the amortization must remain constant.   Cf. Nobelman, 508 U.S. at 331-32, 113 S.Ct. at 2111 (amount of monthly payment, interest rate and amortization schedule are interrelated contractual rights); see also Rake v. Wade, 508 U.S. 464, 468-69, 113 S.Ct. 2187, 2190 (1993) ("Section 1322(b)(2) authorizes debtors to modify the rights of secured claim holders, but it provides protection for home mortgage lenders by creating a specific 'no modification' exception for holders of claims secured only by a lien on the debtor's principal residence.").   Further, when a protected mortgage is not fully paid during the chapter 13 plan duration, the remaining balance is nondischargeable as a long term debt under § 1328(a)(1) (incorporating § 1322(b)(5)).

---

Consumer Protection Act of 2005, generally effective regarding cases filed on or after October 17, 2005, shall be referred to as "BAPCPA § ___.

[2] In this case, the Debtor makes no argument that the Mortgage Creditor holds anything but a protected mortgage.   The court need not address in detail those types of mortgages which are not subject to the anti-modification provision.   See, e.g., In re Lane, 280 F.3d 663 (6th Cir. 2002) (wholly unsecured junior mortgage is not protected by anti-modification provision); Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir. 1996) (mortgage covered triplex and debtor only occupied one unit; mortgage not protected); cf. Allied Credit Corp. v. Davis (In re Davis), 989 F.2d 208 (6th Cir. 1993) (mortgage boilerplate language granting lien on rents and fixtures does not defeat the anti-modification provision).

4

Also, a debtor may not reject a protected mortgage's ancillary provisions such as payment of real property taxes, maintenance of adequate insurance, or the utilization of an escrow account. Cf. Nobelman, 508 U.S. at 329, 113 S.Ct. at 2110 (rights are determined by mortgage documents that are enforceable under state law).

In this district, nearly all protected mortgages are treated by paying postpetition monthly mortgage payments as they become due and curing any prepetition arrearages during the life of the plan within a "reasonable time." § 1322(b)(5).[3] The model chapter 13 plan used in this district provides for maintaining continuing payments and curing of past arrearages. Plan, ¶ IV.H.5 (payment made on those "secured claims on which the last payment is due beyond the length of the plan and paid a set monthly payment . . . including . . . monthly mortgage payments"). (Dkt. No. 6).

B.    Chapter 13 Plan Flexibility in Paying Attorneys' Fees.

The Debtor's argument is straightforward. Attorneys' fees are an administrative expense and entitled to a second priority, to be paid only after domestic support obligations. In chapter 13, administrative priority claims shall be paid before or concurrently with payments to creditors. § 1326(b)(1). Therefore, according to the Debtor, chapter 13 requires attorneys' fees to be paid "as a priority administrative expense, ahead of all lower priority, secured and unsecured creditor claims, other than domestic support obligations and the Trustee's commission." Debtor's Brief at 4. (Dkt. No. 24). Stated differently, the Debtor asserts that unpaid attorneys' fees claims are to be paid first and in full. Debtor's Brief at 2 (citing In re DeSardi, 340 B.R. 790, 809 (Bankr. S.D. Tex. 2006)).

---

[3] The other principal option sometimes used is "surrender" whereby the debtor makes no payments and the mortgage creditor forecloses its mortgage.

The Debtor's argument requires the court to focus on the applicable Bankruptcy Code provisions. In order for attorneys' fees to be paid "[b]efore or at the time of each payment to creditors under the plan," a claim must exist under section 507(a)(2). § 1326(b)(1). This requires an administrative expense *allowed* under section 503(b). § 507(a)(2). Allowed administrative claims include "compensation and reimbursement *awarded* under section 330(a)." § 503(b)(2) (emphasis added).

Section 330 deals with compensation of officers, including a chapter 13 debtor's attorney. § 330(a)(4)(B) (with consideration given to "the benefit and necessity of such services to the debtor"). To determine the "reasonable compensation" of a chapter 13 debtor's attorney, the court must consider certain specified factors. § 330(a)(3)(A-F) (which includes the lodestar analysis).

Therefore, the debtor's attorney must obtain a court order establishing the fee award before, or at the time, a chapter 13 plan is confirmed so the attorney, the debtor, the chapter 13 trustee, all creditors, and the court know what amount shall be first or concurrently be paid under § 1326(b)(1). In this district, chapter 13 debtor's attorneys' fees are normally approved in connection with the confirmation hearing, with the amount of the fee award stated in the confirmation order.

This process is consistent with the law of this circuit that requires a bankruptcy court to use the lodestar method to determine attorneys' fees. Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334 (6th Cir. 1991). In Boddy, the bankruptcy court utilized a so-called "normal and customary" standard and only awarded a chapter 13 debtors' attorney $300, which was included in the confirmation order. At the time of the award, the bankruptcy court had a practice that limited the maximum chapter 13 fee to $650. The Sixth Circuit reversed because the bankruptcy court "did not engage in

6

the lodestar analysis" and "[n]o effort was made to determine a reasonable hourly rate for the particular attorney handling the case and then multiply that rate by the reasonable hours worked on the case." Boddy, 950 F.2d at 337.  However, the Sixth Circuit stated that a bankruptcy court, in its discretion, may consider other factors such as "the typical compensation that is adequate for attorney's fees in Chapter 13 cases," the "difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area."  Boddy, 950 F.2d at 338.  "At a minimum, however, the bankruptcy courts must expressly calculate the lodestar amount when determining reasonable attorney's fees." Id.

Although Boddy establishes the mandated framework to award attorneys' fees, a standardized attorney's fee may be utilized in routine bankruptcy cases. In re Williams, 357 B.R. 434, 439 (B.A.P. 6th Cir. 2007) (noting that an attorney may receive more than the presumptive fee if lodestar analysis is requested; bankruptcy court should not deny an attorney's request to utilize the lodestar analysis to determine fees); accord In re Hudock, No. 12-13965, 2013 WL 4084773, at *5 (E.D. Mich. Aug. 6, 2013) (judge reduced requested attorneys' fees by $800 without "pick[ing] out specific hours;" appellate court stated the bankruptcy court failed to conduct a lodestar analysis and abused its discretion necessitating remand for proper analysis); In re Reuber, No. 10-13852, 2011 WL 1102821 (E.D. Mich. Mar. 23, 2011) ("flat fee" in district for chapter 13 cases was $3,500; bankruptcy court abused its discretion when it limited fee to $3,000 and failed to analyze hours expended and hourly rate in attorneys' fee request); see also McCoy v. Hardeman (In re Tahah), 330 B.R. 777, 781 (B.A.P. 10th Cir. 2005) (bankruptcy court must make findings to justify denial of attorneys' fees request and to

7

only award the $800 presumptive fee amount). Using presumptive fees, sometimes called "fixed," "flat," or "no-look" fees, permits the bankruptcy court to award fees without requiring a debtor's attorney to engage in a time-consuming itemization required by the normal fee application process. Williams, 357 B.R. at 439 (citing Keith M. Lundin, Chapter 13 Bankruptcy, § 294.1 (3d ed. 2002 & Supp. 2004)); see David S. Kennedy et al., Attorney Compensation in Chapter 13 Cases and Related Matters, 13 J. Bankr. L. & Practice 6 Art. 1 (2004).

Other circuits have held the use of presumptive fees to be permissible. In the Seventh Circuit, it has been decided that "it is not an abuse of discretion for the court to set a presumptively reasonable fee and then to require documentation to substantiate a fee in excess of that amount." Matter of Geraci, 138 F.3d 314, 321 (7th Cir. 1998) (fee of $800 in chapter 7 cases is presumptively reasonable provided attorney may itemize to document the services provided to receive a higher fee). It is proper for the bankruptcy judges in a district to meet and determine a reasonable "no-look" presumptive fee. Matter of Kindhart, 160 F.3d 1176, 1178 (7th Cir. 1998) ("presumptive fee procedure used fairly in Chapter 7 or Chapter 13 cases can save time for bankruptcy courts and attorneys;" matter was remanded because the presumptive fee was adopted ten years earlier and the fee should be adjusted so it is reasonable and fair); accord Matter of Kindhart, 167 F.3d 1158, 1160 (7th Cir. 1999) (on remand, Seventh Circuit states that the judges were "fair and reasonable" about adjustment of presumptive fee; it is contemplated that a presumptive fee would be re-evaluated every twenty-four months).

The Fifth Circuit has also ruled that use of a presumptive fee award, i.e., a "precalculated lodestar amount," set forth in a bankruptcy court's general order, is not

8

an abuse of discretion. Matter of Cahill, 428 F.3d 536, 540 (5th Cir. 2005) (the presumptive fee streamlines a court's review of fees and gives the court efficiency and flexibility in handling a large number of chapter 13 cases). However, the Fifth Circuit notes that a bankruptcy court will evaluate "traditional fee applications" on a case-by-case basis using the lodestar factors, and make adjustments when necessary. Id. at 541.

The Ninth Circuit handles "no-look" fees in a similar manner. A bankruptcy court may use a presumptive fee in a chapter 13 case. Use of a presumptive no-look fee saves attorney time and may result in lower attorneys' fees. However an attorney is not required to accept a no-look fee – "he or she is free to seek additional fees using the lodestar method if the presumptive fees have not provided fair compensation for the time spent on the case." In re Eliapo, 468 F.3d 592, 598-600 (9th Cir. 2006) (also stating that if an attorney seeks a lodestar determination, the attorney must itemize services for the entire case to permit court to take a "fresh look" at the entire fee request).

In this district, the judges have adopted presumptive no-look fees in chapter 13 cases. L.B.R. 2016-2(e)(2) (Bankr. W.D. Mich. 2012) (incorporating Exh. 5, "Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals," ¶ 15-18) (herein, "Fees Memorandum").

Because the Michigan State Bar Association does not require attorneys to attend continuing legal education ("CLE"), the bankruptcy judges in this district have determined to strongly encourage attorneys to obtain CLE on a regular basis. The chief judge maintains a list of all attorneys who have attended CLE during a given calendar year. Also, the chief judge keeps another list of all attorneys who are certified by the

American Board of Certification (the "ABC"). Attorneys who have attended CLE, and attorneys who are certified by the ABC ("Board Certified"), receive higher no-look fees in chapter 13 cases than those attorneys who have not personally attended a CLE seminar during the prior or current year. Fees Memorandum, ¶ 15-16; see also § 330(a)(3)(E) (whether an attorney is "board certified" is a relevant factor in determining compensation").

The current "no-look" fee in chapter 13 cases is $2,400 for attorneys who have not recently attended CLE, $3,000 for attorneys who have attended CLE classes, and $3,300 for attorneys who are Board Certified. The presumptive hourly rate is generally $175 per hour, $200 per hour, and $220 per hour respectively. In a complicated chapter 13 business case, the presumptive hourly rate varies but is often initially pegged at $250 per hour. Of course, in any given case, an attorney may seek a higher hourly rate provided "reasonableness" of the requested rate is proven by the attorney. Cf. Boyd v. Engman, 404 B.R. 467, 477 (W.D. Mich. 2009) (determining proper hourly rate includes focusing upon "whether the rate charged for the service is reasonable in light of the complexity and importance of the task").

The Federal Bar Association (Western Michigan) Bankruptcy Section has requested a review and upward adjustment of the "no-look" fee and the presumptive hourly rates. The bankruptcy judges in this district have the request under advisement. It is contemplated that an adjustment shall soon be made. In re Kindhart, 167 F.3d 1158, 1160 (7th Cir. 1999) (judges should periodically reexamine presumptive fees).

In this case, the Debtor's attorneys have attended CLE but are not Board Certified. Based upon the record, it appears the attorneys will be awarded the $3,000 no-look fee if and when the Plan is confirmed. It may be possible, although unknown at

10

this time, that the attorneys will eventually itemize their services "covering both the initial 'no-look' fee awarded and the additional fees requested" to obtain a higher fee.  Fees Memorandum, ¶ 16.

If a future itemization is submitted, the court will independently review the fees requested and schedule a hearing if required.  Fees Memorandum, ¶ 17-18; In re Mayes, 101 B.R. 494, 496 (Bankr. W.D. Mich. 1988) (court recognizes it has an obligation to review attorneys' fees requested even when no objection is raised); accord Solomon v. Wein (In re Huhn), 145 B.R. 872, 875 (W.D. Mich. 1992) ("The bankruptcy court must make an independent review of the fee petition.").

The Debtor's attorneys are cautioned that additional fees shall only be awarded "for representing the interests of the debtor in connection with the bankruptcy case *based on a consideration of the benefit and necessity of such services to the debtor.*" § 330(a)(4)(B) (emphasis added).  Whether this contested matter benefited and was necessary for this Debtor, rather than *only* for the Debtor's attorneys, may be a future issue to be determined by the court, perhaps on its own initiative.  In re Huhn, 145 B.R. at 875; In re Mayes, 101 B.R. at 496.

C.     *Reconciling a Protected Mortgageholder's Rights Versus a Debtor's Attorney's Claim of Priority Regarding Payment of Fees.*

The Debtor, in arguing that attorneys' fees must be first paid under her Plan, places great reliance upon an older contested matter decided by the United States Bankruptcy Court for the Eastern District of Michigan.  In re Harris, 304 B.R. 751 (Bankr. E.D. Mich. 2004).  In Harris, a pre-BAPCPA case, the court considered whether debtors' attorneys' fee should be paid prior to distribution to two secured creditors, each of which held a lien on one of the debtors' vehicles.

11

In Harris, the chapter 13 plan bifurcated the secured creditors' claims into secured and unsecured portions, and proposed "cramdown" treatment of each creditor's claim. Consistently with the eastern district's chapter 13 model plan, distributions to creditors would be made after confirmation. The plan provided that first payments would be paid to administrative expenses, including the debtors' attorneys' fees. Only after attorneys' fees were *fully* paid would the secured creditors begin to receive payments on their secured claims; it was conceded that the secured creditors would receive *no* payments until six months after confirmation. Both creditors objected to plan confirmation on various grounds.[4]

The Harris court overruled the remaining secured creditor's objections and confirmed the plan. That court stated:

> Section 1326(b)(1) [relating to payment of attorneys' fees] itself does not require any such depreciation-protection for [the creditor's] secured claim. [The creditor] must look elsewhere in the Code for such a requirement. And § 1326(b)(1) itself does not *require* any delay in payment of Debtors' attorney fees. Rather, [the creditor's] argument is best viewed as simply urging that delaying the payment of Debtors' attorney fees is *allowed* by § 1326(b)(1), as a permissible method of causing distributions to [the secured creditor] to begin sooner. That is, while [the secured creditor] argues that § 1326(b)(1) *allows* a delay in payment of Debtors' attorney fees, in order to achieve greater depreciation-protection for [the secured creditor's] secured claim, that statute does not require it. As a result, [the secured creditor's] argument is not a valid objection to confirmation under § 1325(a)(1), because it is not a claim that Debtors' Plan violates § 1326(b)(1).

Harris, 304 B.R. at 756-57 (emphasis in original). In summary, the Harris court stated: "§ 1326(b)(1) does not require or allow the full payment of Debtors' attorney fees to be delayed in favor of payments to a secured creditor, unless Debtors' counsel has agreed to such delay." Id. at 758 (ruling that attorneys' fees would be first paid in full under a confirmed plan).

---

[4] Later, one of the secured creditors withdrew its objection, leaving one objection which the court ruled upon in its opinion.

12

This court believes the Harris analysis is inapposite to the facts and circumstances in this case. Harris involved a secured creditor whose claim could be (and was) modified under § 1322(b)(2) and § 1325(a)(5)(B). Harris did *not* address a non-modifiable protected mortgage under § 1322(b)(2). In Harris, the court stated the "plan meets all of the requirements of § 1325(a)" and the court "has no discretion to impose any additional requirements for confirmation." Harris, 304 B.R. at 767. In this case, the Code mandates that the protected mortgage held by the Mortgage Creditor cannot be modified and must be paid. The analysis of Harris cannot be persuasively used by the Debtor to supersede or eliminate the conflicting Code requirement contained in § 1322(b)(2). § 1325(a)(1) (a plan must comply with all provisions of chapter 13 and the other applicable provisions of the Bankruptcy Code).[5]

---

[5] This court also believes that some of the analysis in Harris is questionable and may be subject to valid criticism. First, the plan treatment, i.e., not paying an undersecured creditor for six months while the vehicle (very probably) depreciates, is problematic. BAPCPA § 1326(a)(1)(C); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S.Ct. 626 (1988) (adequate protection compensates for delay and diminution in value resulting from automatic stay, but there is no compensation for lost opportunity costs); In re Gasel Transp. Lines, Inc., 326 B.R. 683 (B.A.P. 6th Cir. 2005) (concurring opinion) (discussing the necessity of adequate protection when requested by a secured creditor); Matter of Kain, 86 B.R. 506 (Bankr. W.D. Mich. 1988) (recognizing that automatic self-effectuating adequate protection does not occur unless cash collateral is protected; for non-cash collateral, "if you don't ask for it [adequate protection], you won't get it").

This court realizes that awarding adequate protection is most often considered as a prepetition remedy. Postpetition, the protection against diminution of collateral value should be built into the periodic payments, the interest (present value) rate and the amortization of the modified cramdown obligation permitted by the Bankruptcy Code. § 1322(b)(2); § 1325(a)(5)(B). In Harris, the secured creditor raised a constitutional argument about the postconfirmation diminution of its collateral. However, the argument was deemed untimely and it was not decided by the court. FED. R. BANKR. P. 3015(f). In *dicta*, the Harris court stated that the constitutional merits were weak. This court is not so certain about a lack of merits in an instance when a plan fails to pay an undersecured creditor, for a number of months, while the collateral diminishes in value. The constitutional requirement would seem to be built-in to § 1325(a)(5)(B) when

13

In this case, after crediting a payment from the Debtor, the balance of the $3,000 no-look fee shall be $1,645. This amount will likely be awarded when the plan is confirmed. Because the Debtor's monthly payment is $1,950, and the monthly mortgage payment is $971.96, if the full balance of attorneys' fees is first paid, there is not enough to pay the monthly mortgage payment. The Mortgage Creditor's protected mortgage will therefore be modified.

Also, in this case, if the Debtor's attorneys are awarded additional fees later, and those fees are paid in full, the Mortgage Creditor may be denied its protected monthly mortgage payment.[6]

Finally, the court notes that it is not uncommon for a debtor to sometimes pay less than the monthly plan payment. If this occurs, and outstanding attorneys' fees are paid first, there is an additional risk that the Mortgage Creditor will not receive its regular mortgage payment.

This court believes that plain meaning of § 1322(b)(2), and its anti-modification provision, requires a chapter 13 plan to pay the on-going regular mortgage payments as they become due. This court further interprets Harris as adopting a plain meaning analysis that attorneys' fees must be first paid under § 1326(b)(1).[7]

---

a proposed cramdown is considered by a court. Cf., e.g., United States v. Security Indus. Bank, 459 U.S. 70, 75, 103 S.Ct. 407, 411 (1982) (secured creditor's interest is "property" within meaning of Fifth Amendment; also recognizing that "the contractual right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the property right of the same creditor in the collateral").

[6] This would occur if the amount of the additional attorneys' fees exceeded $978.04.

[7] Regarding "plain meaning," see United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S.Ct. 1026 (1989).

14

It therefore appears that conflicting priorities may exist when a chapter 13 trustee, in any given month, does not have enough funds in her account to fully pay *both* obligations.

How should these priorities be reconciled?  Applicable statutory construction principles provide the answer.  "When a federal court is required to interpret a statute enacted by Congress, such as the Bankruptcy Code, the Supreme Court has clearly and repeatedly underscored the court's obligation.  'In the interpretation of statutes, the function of the courts is easily stated.  It is to construe the language so as to give effect to the intent of Congress.'"  Kenneth N. Klee & Frank A. Merola, Ignoring Congressional Intent:  Eight Years of Judicial Legislation, 62 Am. Bankr. L.J. 1, 1 & n.1 (Winter 1988) (quoting United States v. American Trucking Ass'ns, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063 (1940)).  In examining the two provisions, i.e., § 1322(b)(2) and § 1326(b)(1), the court must give "significance and effect . . . to every word."  Rake v. Wade, 508 U.S. 464, 471, 113 S.Ct. 2187, 2192 (1993) (citation and internal quotation marks omitted). A provision in the statute should not be construed to supersede another provision. Rake, 508 U.S. at 471, 113 S.Ct. at 2192.  "[It is] the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." United States v. Nordic Village, Inc., 503 U.S. 30, 36, 112 S.Ct. 1011, 1015 (1992).

This court believes that reconciling the two statutory provisions is relatively simple.  Absent consent, the protected mortgage held by the Mortgage Creditor cannot be modified by a chapter 13 plan.  The rights in a protected mortgage are written in stone.  Nobelman v. American Sav. Bank, 508 U.S. 324, 331-32, 113 S.Ct. 2106, 2111 (1993) (the amount of the monthly payment, the interest rate and the amortization must remain constant).

15

To the contrary, § 1326(b)(1) does not *require* attorneys' fees to be first paid. They may be paid first or concurrently with payments to creditors. The anti-modification protected mortgage provision in § 1322(b)(2) trumps § 1326(b)(1) and the payment of a chapter 13 debtor's attorneys' fees.[8]

## V. CONCLUSION.

Confirmation of the Debtor's proposed plan is denied. The Debtor shall be given twenty-one (21) days to file an amended plan that comports with this opinion.

A separate order shall be entered accordingly.

Dated this //ᵗʰ day of
October, 2013 at
Grand Rapids, Michigan

HONORABLE JAMES D. GREGG
United States Bankruptcy Judge

---

[8] The Debtor argues that a debtor may not be able to pay the on-going mortgage payments *and* pay the attorneys' fees and that "loading," i.e., paying a larger plan payment in the earlier months, would "scuttle" most chapter 13 bankruptcies. The court agrees that a debtor need not pay more in the earlier months to pay *both* the monthly mortgage payment and attorneys' fees in full. Indeed, if all disposable income is dedicated to the plan, a debtor shall not be able to pay more in the earlier months. However, this court believes that the Bankruptcy Code mandates that the monthly mortgage payment be paid first with the attorneys taking the balance of the funds available. This treatment of attorneys' fees constitutes a permissible concurrent payment. If a debtor is unable to pay enough to make the regular mortgage payment and pay *something* toward attorneys' fees, the plan will fail to meet the feasibility requirement. § 1325(a)(1) and (6).

16